**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 19, 2009

No. 08-30513

Charles R. Fulbruge III
Clerk

ROBERT R BURTCH

Plaintiff - Appellant

v.

HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY

Defendant - Appellee

Appeal from the United States District Court
for the Middle District of Louisiana
No. 03:06-CV-950

Before KING, BENAVIDES, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Robert Burtch filed this suit after Hartford Life and Accident Insurance Company denied his claim for long-term disability benefits under an ERISA-qualified plan. He appeals from the district court's judgment in favor of Hartford Life and Accident Insurance Company. For the reasons stated below, we conclude that Hartford's denial of Burtch's application for long-term disability benefits was not supported by substantial evidence, and, we therefore reverse the district court's judgment.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

# I. FACTUAL AND PROCEDURAL BACKGROUND

In February 2004, Dr. William Hines, a pulmonologist, diagnosed Robert Burtch with severe emphysema.[1]  Burtch's condition required him to use oxygen every night and occasionally during the day for periods of exertion.  At the time of diagnosis, Burtch was employed by American Insurance Group, Inc. ("AIG") as a senior underwriter.  He was covered by a group long-term disability plan (the "Plan") issued by Hartford Life and Accident Insurance Company ("Hartford").  In March 2005, upon Dr. Hines's recommendation, Burtch stopped working and moved to Montana's cleaner air to ease the symptoms of his emphysema.  After moving, Burtch applied for long-term disability benefits under the Plan.

The Plan defines a disability as the inability to perform one or more essential duties of "your occupation."  A duty is essential if it:  (1) "is substantial and not incidental"; (2) "is fundamental or inherent to the occupation"; and (3) "can not be reasonably omitted or changed."  The Plan states that being able to work the number of hours in a regularly-scheduled work week is an essential duty.  Finally, the Plan states that "your occupation" means the employee's occupation "as it is recognized in the general workplace . . . not . . . the specific job you are performing for a specific employer or at a specific location."

In adjusting Burtch's application, Hartford sent AIG a form asking it to describe "the physical aspects of the employee's job."  AIG reported that Burtch had to walk frequently, sit and use the keyboard continuously, and stand, stoop, kneel, crouch and reach occasionally.

Hartford considered two medical opinions in making its initial ruling on Burtch's application.  Dr. Hines believed that, by the time he recommended that

---

[1]    Burtch complains of a litany of co-morbid conditions including coronary artery disease, hypertension, anxiety, depression, and cognitive impairment.  However, Burtch's arguments on appeal focus on his emphysema.

Burtch move to Montana, Burtch was incapable of performing any full-time job. His report stated that Burtch could walk only "short distances." Hartford hired Dr. Bogdan Nowakowski to perform an Independent Medical Evaluation of Burtch's condition. Dr. Nowakowski concluded that "although this patient is partially disabled, he can work in a sedentary type of work at least part-time in a room with air conditioning."

On January 12, 2006, Hartford denied Burtch's application. In its denial letter, Hartford included walking frequently as one of the essential duties of Burtch's occupation based on AIG's response. After reviewing Dr. Hines's and Nowakowski's reports, Hartford concluded that "while you may have symptoms [of emphysema], as well as some limitations, they do not prevent you from performing the essential duties of your occupation which is classified as a sedentary job." Hartford also specifically concluded that Burtch was capable of working on a full-time basis.

Burtch appealed this denial to Hartford. In connection with his appeal, Burtch submitted a disability award letter from the Social Security Administration.[2] Burtch's primary argument on appeal was that Dr. Nowakowski found that he was capable of working part-time but that the terms of the Plan list full-time work as an essential duty of his employment.

During its review of Burtch's appeal, Hartford hired three additional doctors to review Burtch's condition. Only one of these, Dr. Rosaline Vasquez, commented on his emphysema.[3] Dr. Vasquez stated in her report that she

---

[2] Burtch argues that Hartford erred in not justifying its disagreement with the Social Security award. *See Post v. Hartford Ins. Co.*, 501 F.3d 154, 167 (3d Cir. 2007) (noting that an administrator's disagreement with a Social Security benefits determination is "relevant though not dispositive"). However, Burtch's argument is undermined by the fact that he submitted a one-page award letter but failed to submit the basis and reasoning for the Social Security Administration's determination of disability.

[3] In deciding an appeal of any adverse ruling, ERISA requires a plan administrator to "consult with a health care professional who has appropriate training and experience in the

understood Burtch's occupational duties to include: "mostly sitting, occasional standing, *frequent walking*, lift/carrying up to five pounds, pulling less than five pounds, very frequent use of the computer keyboard, very frequent writing, and frequent telephone calls" (emphasis added). After a review of his file, Dr. Vasquez concluded that Burtch's "pulmonary disease would allow him to carry out a full time sedentary to light occupation as is described in his job description with the accommodation to *occasional walking* of intermittent short distances" (emphasis added).

On October 16, 2006, Hartford denied Burtch's appeal based on Dr. Vasquez's opinion that he was capable of full-time employment. The letter denying the appeal again recognized that Burtch's occupational duties involved frequent walking. Hartford also stated that "[t]he restrictions and limitations indicated by the independent medical reviewers are compatible with the essential duties of Mr. Burtch's occupation as an Underwriter."

---

field of medicine involved in the medical judgment." 29 C.F.R. § 2560.503-1(h)(3)(iii). Burtch argues that Dr. Vasquez was an internist with no specialized training in pulmonology and, therefore, was not qualified to comment on his condition. On this record, Hartford did not abuse its discretion in soliciting Dr. Vasquez's opinion on Burtch's emphysema.

In *Guthrie v. National Rural Electric Cooperative Association Long-Term Disability Plan*, 509 F.3d 644 (4th Cir. 2007), the plan administrator denied the plaintiff's claim based on the report of a pulmonologist. *Id.* at 651. The Fourth Circuit reversed, finding that a pulmonologist was not qualified to comment on the plaintiff's other conditions such as depression and skin lesions. *Id.* at 652. The court stated that "[u]nder the circumstances, [the administrator] should have referred [the plaintiff's] appeal to an internist or primary care physician to assess her other ailments." *Id.* Notably, the court did not suggest that the plan administrator needed to seek the advice of a psychologist for the depression or a dermatologist for the skin lesions. *See also Larque v. SBC Commc'ns, Inc.*, No. 04-CA-0883, 2005 U.S. Dist. LEXIS 35263, at *23 n.13 (W.D. Tex. Dec. 14, 2005) (describing 29 C.F.R. § 2560.503-1(h)(3)(iii) as "not so hyper-technical" to require that the reviewing physician have the exact same speciality as the original physician); *Lee v. Aetna Life & Cas. Ins. Co.*, No. 05-Civ-2960, 2007 U.S. Dist. LEXIS 38205, at *17–18 (S.D.N.Y. May 24, 2007) (rejecting an argument that an internist was unqualified to review the diagnosis of a rheumatologist); *Salomaa v. Honda Long Term Disability Plan*, 542 F.Supp. 2d 1068, 1080 (C.D. Cal. 2008) (describing 29 C.F.R. § 2560.503-1(h)(3)(iii) as "not so demanding that it requires plan administrators to retain an expert specific to every unique condition or disease that a beneficiary may claim").

4

On December 13, 2006, Burtch filed suit in the Middle District of Louisiana, seeking review of Hartford's denial of his application. Hartford and Burtch filed competing motions for summary judgment, which were referred to a magistrate judge. On March 11, 2008, the magistrate judge issued a report recommending that Hartford's motion for summary judgment be granted and Burtch's motion be denied. The report set forth the essential duties of Burtch's job as provided by AIG, including frequent walking. After summarizing the requirements of the Plan and the various doctors' reports, the magistrate judge applied the abuse of discretion standard of review "with slightly less deference due to [Hartford's] conflict of interest" as both administrator and insurer. Ultimately, the magistrate judge concluded that "the administrator acted within its discretion in denying the disability claim. There is a rational connection between the known facts and the decision and between the found facts and the evidence." On April 21, 2008, the district court adopted the magistrate judge's report as its opinion without alteration and granted Hartford's motion for summary judgment.

## II. STANDARD OF REVIEW

We review de novo the district court's grant of summary judgment in an ERISA case, applying the same standards as the district court. *Wade v. Hewlett-Packard Dev. Co. LP Short Term Disability Plan*, 493 F.3d 533, 537 (5th Cir. 2007).

The Plan grants Hartford the "full discretion and authority to determine eligibility for benefits and to construe and to interpret all terms and provisions" of the Plan. Accordingly, we review Hartford's denial of benefits for abuse of discretion. *Chacko v. Sabre, Inc.*, 473 F.3d 604, 610 (5th Cir. 2006) ("Where the plan expressly confers discretion on the plan administrator to construe the plan's terms, the administrator's construction is reviewed for abuse of discretion."). The same standard is applied to Hartford's factual determinations. *Id.* Under

an abuse of discretion standard, we consider whether the plan administrator's action was arbitrary and capricious. *Lain v. UNUM Life Ins. Co. of Am.*, 279 F.3d 337, 342 (5th Cir. 2002); *see also MediTrust Fin. Servs. Corp. v. Sterling Chem., Inc.*, 168 F.3d 211, 214 (5th Cir. 1999) ("[T]here is only a semantic, not a substantive, difference between the arbitrary and capricious and the abuse of discretion standards in the ERISA benefits review context." (internal quotation marks and citation omitted)). "A decision is arbitrary when made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Lain,* 279 F.3d at 342 (internal quotation marks and citation omitted). A plan administrator's decision will be upheld if it is supported by substantial evidence. *Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 397 (5th Cir. 2007). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. at 398 (internal quotation marks and citation omitted).

## III. DISCUSSION

Burtch advances three major arguments: (1) Hartford applied the "any occupation" standard to his claim rather than the "own occupation" standard; (2) the magistrate judge did not give sufficient consideration to Hartford's conflict of interest as both the insurer and administrator; and (3) Hartford's finding that he was capable of performing his occupation was not supported by substantial evidence in the record. Although we find no error under the first two arguments, we reverse and remand because there is no evidence in the record to support Hartford's finding that Burtch was capable of performing one of the essential duties of his occupation, namely frequent walking.

Burtch argues that Hartford applied an "any occupation" standard to his disability claim rather than the "own occupation" standard required by the Plan. Burtch's argument rests on Hartford's use of the word "sedentary" in concluding

that he was capable of performing the essential duties of his occupation, rather than the specific duties provided by AIG. Hartford admits that the "own occupation" standard applies under the Plan, but contends that it properly applied that standard.

This court discussed the scope of the "own occupation" standard in *Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389 (5th Cir. 2006). In *Robinson*, the plaintiff drove 800–1000 miles per week for his job and, after a stroke, was no longer able to drive. *Id.* at 391. Under the "own occupation" standard, Aetna denied the claim because it "determined that driving was not a material duty of a sales representative in the general economy." *Id.* at 392 (footnote omitted). This court rejected Aetna's argument that the specific tasks listed by the employer are irrelevant to an "own occupation" analysis. Relying on a Second Circuit case, we noted that while the correct standard is the occupation in the general economy and not the specific job for a specific employer, the specific duties of the employee's job, as described by the employer, are relevant:

> Though her precise duties do not define her regular occupation, in this case they well illustrate the duties of a director of nursing at a small health care facility, and nothing in the record provides any basis for thinking that such a position at a facility comparable to hers requires different duties.

*Id.* at 396 (quoting *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 253 (2d Cir. 1999) (emphasis and alterations removed)). We then concluded that "Robinson's duties at Glazer serve to illustrate the duties that a sales representative at a comparable firm might perform." *Id.* Here, Hartford relied on AIG's list of job duties throughout the entire process of adjusting Burtch's claim. Indeed, the first time Hartford suggested that frequent walking may not be an essential duty of Burtch's occupation was on appeal. It has pointed to no evidence suggesting that frequent walking is atypical of the duties of an insurance underwriter in the general economy. Thus, Hartford cannot argue

that frequent walking was not an essential duty of Burtch's occupation under the "own occupation" standard.

In support of his narrower construction of the "own occupation" standard, Burtch cites *Frei v. Hartford Life Insurance Co.,* No. 05-01191, 2006 U.S. Dist. LEXIS 12846 (N.D. Cal. Mar. 7, 2006). *Frei* involved the exact same language used by Hartford in the Plan to describe the "own occupation" standard. The plaintiff in *Frei* worked as a sales assistant in a bank, "which was classified as sedentary." *Id*. at *3. This job required her to sit at least seven hours a day, and she claimed that it caused her too much pain to sit for that duration. *Id*. The court stated that the defendant was not required to make a determination of disability based on the plaintiff's specific job at her specific employer, but rather only needed to find that "she was disabled from her occupation as a sales assistant at a trading desk, regardless of employer." *Id*. at *20. The court held that the administrator had abused its discretion because it relied on a doctor's report stating that the plaintiff was "capable of employment in a sedentary position such as a sales assistant." *Id*. at *26 (internal quotation marks omitted). The court interpreted the administrator's conclusion to be that the plaintiff was not disabled because she could have performed some sedentary occupation instead of concluding that she was capable of performing her own occupation.

Hartford's finding in this case is the inverse of the one it made in *Frei*. Hartford's mistake in *Frei* was "determining that only disability from any sedentary position would trigger coverage under the policy." *Id*. (emphasis removed). Here, Hartford found that Burtch was capable of doing his specific job, which happened to be classified as sedentary; as opposed to finding that he could do some generic form of sedentary work. In its denial letter, Hartford concluded that the medical reports did not establish that Burtch's emphysema prevented him "from performing the essential duties of [his] occupation which

is classified as a sedentary job." Hartford simply used the word "sedentary" as short-hand to describe the general nature of the duties of an underwriter, but it considered the actual duties as provided by AIG. Thus, Hartford's review of Burtch's application complied with the "own occupation" standard in that it actually looked to the specific duties of his job as an example of the duties of such a position in the general economy and did not simply consider whether Burtch could do any sedentary job.[4]

Burtch also argues that under *Metropolitan Life Insurance Company v. Glenn*, 128 S. Ct. 2343 (2008), which was issued after the entry of the judgment, the district court erred in not giving sufficient weight to Hartford's conflict of interest as both the plan administrator and the insurer. In *Glenn*, the Supreme Court held that: (1) an insurance company's dual role in "determin[ing] whether an employee is eligible for benefits and pay[ing] benefits out of its own pocket" creates a conflict of interest; (2) "a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits"; and (3) "the significance of the factor will depend upon the circumstances of the particular case." *Id*. at 2346 (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). In reaffirming *Firestone*, the Court expanded:

> We do not believe that *Firestone*[] . . . implies a change in the *standard* of review, say, from deferential to *de novo* review. Trust law continues to apply a deferential standard of review to the

---

[4] Burtch also argued that Hartford could not have correctly applied the "own occupation" standard because of an email allegedly showing that Hartford had decided to deny the claim before receiving the description of his job duties from AIG. However, the record reveals Burtch's allegation to be incorrect.

The email was sent on January 6, 2006, from Nancy Agostino, the Hartford employee examining Burtch's claim, to a human resources employee at AIG stating that she was "in the process of denying" the claim and that she needed "a copy of his formal job description" before "doing the formal denial." While this implies that she did not yet have his job duties from AIG, the electronic notes contained in Burtch's file show that Hartford had already received this information in some form on October 10, 2005.

discretionary decisionmaking of a conflicted trustee, while at the same time requiring the reviewing judge to take account of the conflict when determining whether the trustee, substantively or procedurally, has abused his discretion.

*Id.* at 2350.

Thus, *Glenn* stands for the proposition that such a conflict of interest is "one factor among many that a reviewing judge must take into account." *Id.* at 2351. The weight given to the factor is different in each case, but is of greater importance "where circumstances suggest a higher likelihood that it affected the benefits decision . . . [and] less important . . . where the administrator has taken active steps to reduce potential bias and to promote accuracy." *Id.*

In this case, the magistrate judge acknowledged Hartford's conflict of interest in being both the insurer and administrator. Furthermore, the magistrate judge, citing *Firestone*, noted that this conflict is a factor in determining if there was an abuse of discretion. Specifically, the magistrate judge stated in the report and recommendation that:

> Plaintiff has produced no evidence other than the fact that defendant is the plan administrator and the insurer. Thus, the decision to deny long-term disability benefits under the LTD policy is reviewed with slightly less deference due to defendant's conflict of interest.

Burtch has not presented any evidence showing that there is a greater likelihood that Hartford's conflict affected its decision to deny his claim. Moreover, he has not shown how the district court would have reached a different result in light of *Glenn*. Accordingly, we conclude that, although it was written prior to *Glenn*, the magistrate judge's report and recommendation complies with the Supreme Court's direction in *Glenn* to consider Hartford's conflict of interest as one factor in determining if there was an abuse of discretion. Since nothing was presented to show a greater likelihood of conflict

10

in this case, the magistrate judge gave the conflict of interest the appropriate weight in its consideration.

Lastly, Burtch argues that Hartford's conclusion that he was capable of performing his own occupation was not supported by substantial evidence in the record. As discussed above, frequent walking was an essential duty of Burtch's occupation. AIG reported that it was an essential duty, Hartford accepted it as an essential duty, and no evidence was presented to show that it was a duty unique to this specific job for this specific employer.

Three doctors reviewed Burtch's emphysema. Dr. Hines concluded that Burtch could walk only "short distances" and that he was not capable of performing any full-time job. Dr. Nowakowski's report does not specifically reference Burtch's ability to walk, but concluded that Burtch "can work in a sedentary type of work at least part-time in a room with air conditioning." Dr. Vasquez, after recognizing frequent walking as one of the duties of Burtch's position, concluded that Burtch could "carry out a full-time sedentary to light occupation as is described in his job description with the accommodation to do *occasional walking* of short distances."

In denying his appeal, Hartford concluded that "[t]he restrictions and limitations indicated by the independent medical reports are compatible with the essential duties of Mr. Burtch's occupation as an Underwriter." This conclusion is not supported by the record. Frequent walking was an essential duty of Burtch's employment and not a single doctor—including two hired by Hartford—reported that Burtch was capable of that degree of walking. Dr. Vasquez's conclusion that he could do "occasional walking of short distances" is not compatible with a requirement of frequent walking. Thus, there is no rational connection between the found facts (Burtch's ability to walk frequently) and the evidence (no doctor finding that Burtch could walk more than occasionally).

11

On this record, the remainder of Burtch's arguments regarding the other essential duties of his employment are meritless.

## IV.  CONCLUSION

For the reasons stated above, we REVERSE the district court's judgment.