**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-1519

KEVIN GEIGER,

Plaintiff - Appellant,

v.

ZURICH AMERICAN INSURANCE COMPANY,

Defendant - Appellee.

Appeal from the United States District Court for the District of South Carolina, at Greenville.  Joseph Dawson, III, District Court Judge. (6:20-cv-00656-JD)

Argued:  May 4, 2023                          Decided:  June 28, 2023

Before WYNN, DIAZ, and QUATTLEBAUM, Circuit Judges.

Affirmed by published opinion. Judge Quattlebaum wrote the opinion in which Judge Wynn and Judge Diaz joined.

**ARGUED:** Nathaniel W. Bax, FOSTER LAW FIRM, LLC, Greenville, South Carolina, for Appellant. Irma Teresa Reboso Solares, CARLTON FIELDS, P.A., Miami, Florida, for Appellee. **ON BRIEF:** T. Foster Haselden, GIGNILLIAT, SAVITZ & BETTIS, L.L.P., Columbia, South Carolina, for Appellee.

QUATTLEBAUM, Circuit Judge:

Kevin Geiger sued Zurich American Life Insurance Company of New York* ("Zurich") in district court challenging Zurich's denial of long-term disability ("LTD") benefits under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1132(a)(1)(B). The parties cross-moved for judgment on the record, and the district court awarded judgment to Zurich. Geiger appeals. Because Zurich's decision to deny benefits followed a principled reasoning process and was supported by substantial evidence, we affirm.

I.

Geiger worked at CBS News in New York as a writer/editor. In that role, he gathered, wrote and produced hourly network radio broadcasts and covered breaking news events. While in theory the job required Geiger to work five days and 40 hours per week, in reality, the hours were unpredictable and long. Geiger worked various shifts and often put in overtime to meet the job's deadlines.

In March 2018, Geiger—58 years old at the time—could not go to work because of shortness of breath and other cardiovascular issues. He filed a claim for disability benefits. Zurich, CBS's insurer and claims administrator, approved short-term disability benefits for several weeks. When Geiger returned to work in April, he lasted less than a week before he had to stop again.

---

* Named as Zurich American Insurance Company in the litigation.

2

Geiger's treating cardiologist, Dr. William Cole, examined Geiger in April. Dr. Cole then provided Zurich with a May statement, indicating that Geiger was disabled primarily due to moderate pulmonary hypertension and secondarily due to moderate-severe pulmonic regurgitation. Despite these conditions, Dr. Cole projected that Geiger could soon return to work but would require some restrictions and accommodations.

Subsequent treatment revealed that Geiger had a serious heart condition. In June 2018, he received a heart catheterization. And on July 5, 2018, he underwent open heart surgery to replace his aortic valve.

In May, June and July, Zurich approved Geiger's short-term disability benefits. Zurich's internal worksheets indicated that it would be reasonable to initially approve six weeks continued disability after Geiger's open-heart surgery because he would be unable to perform the core functions of his job as a writer/editor. And Zurich later extended the short-term benefits through September 2018.

After his open-heart surgery, Geiger applied for LTD benefits under CBS's long-term disability Plan. And Zurich approved LTD benefits starting at the end of September. Zurich found Geiger was "unable to perform [his] occupation as a Writer/Editor due to [his] cardiac condition." J.A. 126. But Zurich explained that it would require updates on Geiger's medical progress and medical conditions.

A few months later, Geiger moved from New York to Asheville, North Carolina. He began seeing a new cardiologist, Dr. Brett Izzo. In April 2019, Dr. Izzo saw Geiger for the first time and ordered an echocardiogram performed. At the initial visit, Dr. Izzo recorded that Geiger had "done quite well" despite his extensive medical history. J.A. 369.

3

And an echocardiogram confirmed this impression. Dr. Izzo noted that Geiger had intentionally lost around sixty pounds since his surgery, walks three miles a day with his wife and dogs and, at that time, was not experiencing any cardiovascular symptoms such as chest pain or pressure, dyspnea, palpitations, presyncope or syncope. Dr. Izzo also noted that Geiger did not have any symptomatic reoccurrence of atrial fibrillation or flutter. Geiger told Dr. Izzo during that visit that his only complaint was some ankle discomfort after long walks.

Even so, Dr. Izzo provided a statement to Zurich claiming that Geiger was disabled primarily due to his mechanical aortic valve replacement and secondarily due to mitral valve repair. The statement referred back to his office note describing Geiger's self-report of symptoms and the relevant physical exam findings related to any disabling conditions. In the section of the statement marked "Return to Work Release," Dr. Izzo checked the box that reflected "[m]y patient will require permanent work restrictions and/or accommodations as follows: cannot work." J.A. 368.

Around the same time, Geiger also completed a questionnaire for Zurich as part of its ongoing review of his disability claim. Geiger described his "deteriorated health due to congestive heart disease." J.A. 130. But in that same document, Geiger noted that he goes for walks twice a day for a total of about three miles. J.A.131.

Concerned with these inconsistencies, Zurich followed up with Dr. Izzo about Geiger's claim. It asked Dr. Izzo why he labeled Geiger disabled when Geiger could walk three miles a day and his job was sedentary. Dr. Izzo referred Zurich back to his clinical

4

note and stated that it would be difficult for Geiger to return to work because of his extensive cardiac history and his need to take high doses of a diarrhetic.

In July 2019, Zurich denied Geiger any additional long-term benefits. Zurich acknowledged receipt of Dr. Izzo's initial evaluation and echocardiogram findings. In determining that Geiger no longer met the Plan's definition of disability, Zurich considered Geiger's recent normal echocardiogram and Dr. Izzo's records showing that Geiger had no cardiovascular symptoms, no recurrence of atrial fibrillation and no edema. Zurich concluded that the medical information did not show that Geiger was "unable to perform the material and substantial duties of [his] regular occupation due solely to [his] sickness or injury"—the standard for disability under the Plan. J.A. 60.

Geiger then hired counsel to appeal the adverse decision on his LTD benefits. Those lawyers sent Zurich another written statement from Dr. Izzo, this one completed September 2019. The statement noted that Geiger had three valve replacements, was on chronic coumadin and took large doses of Lasix daily. It also stated that because Geiger had a second major cardiac surgery a year prior, his clinical status was "tenuous." J.A. 376. And according to Dr. Izzo, "due to his clinical status being so tenuous," Geiger was disabled from his prior occupation or any occupation for which he is qualified. J.A. 377.

Based on the new information, Zurich ordered a disability peer review by Dr. Mark Sims, a board-certified internal medicine doctor with a subspeciality certificate in cardiovascular disease. Dr. Sims reviewed medical records and conferred with Dr. Izzo. He ultimately concluded, after considering the totality of the medical records provided, that Geiger would be capable of full-time seated work with certain restrictions and limitations.

5

Zurich sent a copy of the report to Geiger's lawyers and invited them to respond to its findings. Geiger's lawyers replied that they "will not be submitting any additional materials." J.A. 236.

So in November 2019, Zurich upheld its denial decision. Zurich acknowledged Geiger's atrial fibrillation, mechanical aortic valve replacement, pulmonic valve disease, hypertension, diabetes mellitus and history of multiple surgeries. But Zurich also noted that Geiger remained active by walking three miles a day. And it added that we "are not disputing that your client has function limitations due to his physical conditions, however, his occupation is one in which he can perform the material and substantial duties with his functional impairments." J.A. 242. In its denial letter, Zurich also relied on the Physical Requirements and Job Demand Analysis completed for Geiger's job. That analysis indicates that Geiger's job was sedentary involving almost continuous sitting with occasional bending, twisting or stooping to, for example, pull copies from the printer.

Geiger then sued Zurich in district court, challenging Zurich's LTD benefits denial under ERISA. § 1132(a)(1)(B). The parties cross-moved for judgment on the record. On May 3, 2022, the district court issued an opinion and order granting Zurich's motion and denying Geiger's. In its decision, the court held that Zurich did not abuse its discretion in denying Geiger's claim. Geiger timely filed his notice of appeal. We have jurisdiction to review the final decision of the district court under 28 U.S.C. § 1291.

II.

A.

Before considering Geiger's arguments on appeal, we explain our standard of review, as it is important in our conclusion. We review the district court's review of a coverage decision by an ERISA plan administrator de novo and apply the same standard of review as the district court. *Helton v. AT&T Inc.*, 709 F.3d 343, 351 (4th Cir. 2013). The scope of the district court's review of a challenge to an administrator's coverage determination under § 1132(a)(1)(B) turns on whether the plan at issue vests the plan administrator with discretionary authority. *Id.* Where, as is the case here, the "ERISA benefit plan vests with the plan administrator the discretionary authority to make eligibility determinations for beneficiaries, a reviewing court evaluates the plan administrator's decision for abuse of discretion." *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 629–30 (4th Cir. 2010). Under the abuse of discretion standard, we "will not disturb a plan administrator's decision if the decision is reasonable, even if we would have come to a contrary conclusion independently." *Id.* at 630.

In determining the reasonableness of the administrator's discretionary decision, we consider a non-exhaustive list of factors set out in *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335 (4th Cir. 2000). Those factors are:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the

7

exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Id.* at 342–43.

But we consider the *Booth* factors in the context of a "highly deferential" standard of review. *Cosey v. Prudential Ins. Co. of Am.*, 735 F.3d 161, 168 (4th Cir. 2013). Again, we do not evaluate whether we would have made the same decision as the administrator. To the contrary, we only look to see whether the administrator's decision was a product of a "deliberate, principled reasoning process," and "supported by substantial evidence." *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 630 (4th Cir. 2010) (quoting *Guthrie v. Nat'l Rural Elec. Coop. Ass'n Long Term Disability Plan,* 509 F.3d 644, 651 (4th Cir. 2007)). Substantial evidence means "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *DuPerry v. Life Ins. Co. of N. Am.*, 632 F.3d 860, 869 (4th Cir. 2011) (quoting *LeFebre v. Westinghouse Elec. Corp.*, 747 F.2d 197, 208 (4th Cir. 1984)).

## B.

Applying that standard, we affirm the district court. Zurich did not abuse its discretion in denying LTD benefits to Geiger.

Zurich conducted a reasonable decision-making process. First, it approved short-term-disability benefits for March 2018 and extended them through September 2018 based on the medical records it had at that time. Then, after Geiger applied for LTD benefits, Zurich approved them. But Zurich cautioned that it would continue to require updates on Geiger's progress and medical conditions.

Then, after Geiger moved from New York to Asheville, Zurich received Dr. Izzo's records. While Dr. Izzo said that Geiger was disabled, his records belied that conclusion. Geiger had a normal echocardiogram, had no heart symptoms, was walking three miles a day and had lost substantial weight. To be disabled under the Plan, an employee must be "unable to perform the material and substantial duties of [his] regular occupation due solely to [his] sickness or injury." J.A. 60. Zurich determined that, based on the information from Dr. Izzo, Geiger no longer met that definition.

Even so, Zurich continued to consider Geiger's claim that he was disabled. After Geiger's attorneys sent Zurich an additional statement from Dr. Izzo, Zurich hired Dr. Sims to do a peer review analysis. Dr. Sims reviewed the records and even spoke with Dr. Izzo. After doing that, Dr. Sims concluded that Geiger could work so long as he had certain physical restrictions. Dr. Sims also advised that Dr. Izzo "'did not seem to disagree that he was capable of full-time work.'" J.A. 240. Geiger's attorneys declined to submit any materials to counter that report.

Zurich then reaffirmed its denial of Geiger's benefits. It acknowledged Geiger's history of heart problems. But relying on the records from Dr. Izzo that Geiger was not continuing to experience heart-related symptoms, that he had a normal echocardiogram, that he was walking three miles a day and that he had lost weight, Zurich found that Geiger could return to work. It conceded Geiger would need certain restrictions and limitations at work. But it ultimately determined that Geiger was not disabled under the Plan.

Considering the *Booth* factors and our standard of review, Zurich's interpretation of the Plan's terms, purpose and goals was reasonable. Zurich applied a reasoned and

9

principled decision-making process and its decision was supported by substantial evidence. In reaching this conclusion, we are not suggesting there is no evidence in the record to support Geiger's claim. But that is not the question under the deferential standard of review applicable here. As we have said before, "[l]ike offensive linemen on a football team, standards of review lack glamor but are often decisively important." *U.S. Sec. & Exch. Comm'n v. Clark*, 60 F.4th 807, 812 n.6 (4th Cir. 2023) (cleaned up). That is the case here. To repeat, we must affirm the administrator's decision if it is reasonable and supported by substantial evidence. And as already noted, it certainly was.

C.

On appeal, however, Geiger insists that Zurich abused its discretion by failing to evaluate his particular job responsibilities in determining his disability status. But Geiger misunderstands what the Plan requires. The Plan defines "Regular Occupation" as "the occupation [the employee is] routinely performing when [his] disability begins." J.A. 85. And the Plan explains that Zurich "will look at [the employee's] occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location." J.A. 85. Of note, Zurich completed and considered a "Physical Requirements and Job Demand Analysis" that evaluated Geiger's job responsibilities. That analysis concluded that his writer/editor position was a sedentary one that required minimal physical exertion. J.A. 291.

Geiger argues that Zurich should have done more. It should have, Geiger contends, performed a vocational review or consulted the Department of Labor's Dictionary of Vocational Titles. But under the Plan, it was Geiger's burden, not Zurich's, to provide

10

"written proof of [his] claim for disability benefits." J.A. 75. Zurich's responsibility was to then "assess [Geiger's] ability to work and the extent to which [he] [was] able to work by considering the facts and opinions from [Geiger's] physicians, and physicians, medical practitioners or vocational experts of [its] choice." J.A. 60; *see Elliott v. Sara Lee Corp.*, 190 F.3d 601, 609 (4th Cir. 1999) (noting that "a plan administrator is under no duty to secure specific forms of evidence" and that the administrator was not required to secure the specific testimony of a vocational expert where the record contained "ample and reliable medical documentation"); *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1289 (10th Cir. 2002) (noting that vocational evidence is useful in exploring how an employee's impairments effect his ability to perform jobs other than what he held before the onset of disability but declining to require such evidence in every case when assessing whether there are other available occupations suitable for the claimant). Thus, Zurich did not abuse its discretion by not obtaining additional vocational evidence, as neither the Plan nor our case law affirmatively requires it to have done so.

## D.

Geiger also argues that Zurich failed to consider the amount of stress involved in his job and how that stress might impact his cardiac conditions. But the Plan defines "disabled" as the inability to "perform the material and substantial duties of [one's] regular occupation due solely to [one's] sickness or injury." J.A. 60. And nowhere in the records did Dr. Cole, Dr. Izzo or any other physician opine that Geiger cannot perform the duties of his prior job because of the stress associated with doing so. Perhaps an administrator might conclude that he is entitled to LTD benefits because stress is an inherent factor for

11

anyone recovering from the type of heart conditions Geiger had experienced. But that does not mean Zurich's reliance on the stated reasons for Geiger's disability rather than allegedly implied problems from returning to work was unreasonable. The administrator's decision followed a principled reasoning process and was supported by substantial evidence. So, under our standard of review, it did not abuse its discretion.

III.

For the reasons stated above, the district court's decision that Zurich did not abuse its discretion in denying Geiger's application for LTD benefits is

*AFFIRMED.*