United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 20, 2007**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 06-11370
Summary Calendar

---

ANDREA D. PYLANT,

Plaintiff-Appellant,

v.

HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, and
THE FIRST AMERICAN CORPORATION GROUP LIFE, MEDICAL, DENTAL,
DISABILITY BENEFITS TRUST NO. 502,

Defendants-Appellees.

---

Appeal from the United States District Court for the
Northern District of Texas, Dallas Division

---

Before DAVIS, WIENER, and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

Plaintiff-Appellant Andrea Pylant appeals the district court's
grant of summary judgment in favor of Defendants-Appellees Hartford
Life and Accident Insurance Co. ("Hartford") and The First American
Corporation Group Life, Medical, Dental, Disability Benefits Trust
No. 502 ("Plan").  This case arises from the termination of long-
term disability benefits ("LTD benefits") by the administrator of
an employee welfare benefit plan governed by the Employee
Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §

1001, *et seq*. We AFFIRM.

We review a grant of summary judgment *de novo*, using the same criteria as the district court. *Hanks v. Transcont. Gas Pipe Line Corp.*, 953 F.2d 996, 997 (5th Cir. 1992). Summary judgment is appropriate if the record reflects "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A court's role at the summary judgment stage is not to weigh the evidence or determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

Pylant worked as a technical writer for First American Financial Corporation ("First American") from September 2000 until November 2001, when she quit because of fatigue and pain. In February 2002, Pylant filed a claim for LTD benefits after being diagnosed with chronic fatigue, Epstein Barr, cytomegalovirus, and psoriatic arthritis. Her claim was approved on May 30, 2002, and she began receiving LTD benefits. In October 2002, Hartford reevaluated her eligibility for LTD benefits and, based upon an Attending Physician Statement ("APS") and Physical Capabilities Form ("PCF") completed by Pylant's doctor, and her own self-

2

completed questionnaire, determined that Pylant continued to qualify for benefits.

Hartford again reviewed Pylant's eligibility for LTD benefits in June 2003. This time, Pylant's claimant questionnaire and the APS and PCF presented divergent accounts of Pylant's abilities. While the questionnaire stated that she could perform almost all activities of daily living without assistance, and occasionally attended church and her children's sporting activities, the APS and PCF stated that she could never drive a vehicle and could only sit, stand, or walk for less than fifteen minutes at a time. Based upon this discrepancy, Hartford's claims examiner referred Pylant's claim to Hartford's Special Investigations Unit ("SIU") for further fact-gathering.

Hartford's SIU conducted video surveillance of Pylant's daily activities for two days in August 2003. During that time, the SIU observed and recorded Pylant engaged in various activities that contradicted assessment in the APS and PCF of her condition, including driving her children to school, removing a child weighing in excess of twenty pounds from the rear of her car, carrying that child with both hands into her home, and holding an infant for eighteen minutes while standing. Based on this surveillance, SIU conducted an in-person interview with Pylant. Pylant admitted that she was readily capable of performing the observed activities and conceded that she had absolutely "no limitations or restrictions" on how long she could sit.

3

In September 2003, Hartford requested that Pylant submit another claimant questionnaire and have her treating physician complete another APS and PCF. Pylant's revised questionnaire reiterated her disabilities and contradicted her interview admissions by stating that she could not sit for more than fifteen minutes. Her doctor's APS and PCF opined that she could sit, stand, walk, and drive for approximately an hour at a time. Upon receiving these documents, Hartford sent Pylant's doctors copies of the surveillance video and in-person interview, and asked them, based on their contact with Pylant and those materials, whether she could return to work subject to various, specified limitations. One doctor left a voice mail stating that she agreed that Pylant could return to work with those limitations. The other doctor responded to Hartford's request by stating that Pylant could return to work on a full-time basis with the restrictions stated. Hartford then notified Pylant that further benefits would not be payable beyond January 31, 2004.

Pylant appealed Hartford's discontinuation of her LTD benefits. Hartford referred her claim to another doctor, Dr. David Trock, for independent medical review. Dr. Trock reviewed Pylant's medical records and surveillance video and contacted her previous doctors. Dr. Trock subsequently concluded that Pylant was able to return to work in a sedentary capacity with restrictions. Hartford decided to uphold its termination of Pylant's LTD benefits and sent Pylant a letter on January 7, 2005, advising her that the appeal

4

had been denied.  Pylant filed this lawsuit on February 24, 2005, and the district court granted summary judgment for Hartford.

In analyzing a claim for benefits allegedly due under an ERISA plan, the district court reviews the plan administrator's determination for abuse of discretion when the plan expressly gives the administration discretionary authority. *Vecher v. Alexander & Alexander Inc.*, 379 F.3d 222, 226 (5th Cir. 2004).  If an administrator's decision is supported by substantial evidence, the court must affirm that decision. *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004).  However, if there is a potential conflict of interest, the abuse of discretion inquiry is altered. *Vega v. National Life Ins. Services, Inc.*, 188 F.3d 287, 297 (5th Cir. 1999).  Here, because Hartford is both the insurer and the administrator, but Pylant has not produced evidence showing any greater conflict, Hartford's decision is afforded "only a modicum less deference" than it would receive in other circumstances. *Id*. at 301.

As a preliminary matter, Pylant argues Hartford incorrectly defined the Plan term "your occupation," which serves to establish the minimal baseline of ability necessary to perform her job, through reference to the Department of Labor's Dictionary of Occupational Titles, rather than according to the duties she actually performed as a technical writer for First American.  As a result, the essential duties of her occupation were lesser than

5

those she actually performed with First American. Moreover, Pylant argues that Hartford incorrectly included functional limitations in her job description to accommodate her disability.

This Court uses a two-step analysis in determining whether a plan administrator abused its discretion in construing plan terms. *Rhorer v. Raytheon Eng'rs & Constructors, Inc.*, 181 F.3d 634, 639 (5th Cir. 1999). First, we determine the legally correct interpretation of the plan and whether the administrator's interpretation accords with that interpretation. *Id.* If that construction is legally sound, then no abuse of discretion occurred and the inquiry ends. *Id.* at 639-40. If, however, we conclude that the administrator has not given the plan the legally correct interpretation, we determine whether the administrator's interpretation constitutes an abuse of discretion. *Id.* at 640. A substantial factor in determining whether the administrator's interpretation is a legally correct interpretation is whether the interpretation is "fair and reasonable." *Lain v. UNUM Life Ins. Co. of Am.*, 279 F.3d 227, 244 (5th Cir. 2002).

The district court cited to a district court opinion from the Eleventh Circuit in determining that reference to the Department of Labor's Dictionary of Occupational Titles was appropriate because "insurers issuing disability policies cannot be expected to anticipate every assignment an employer might place upon an employee outside the usual requirements of his or her occupation."

6

*Richards v. Hartford Life & Accident Ins. Co.*, 356 F.Supp. 2d 1278 (S.D. Fla. 2004), *aff'd*, 153 Fed. Appx. 694 (11th Cir. 2005). We agree. Moreover, while Pylant argues that Hartford's inclusion of "functional limitations" in the definition of her occupation was legally incorrect, courts have consistently upheld administrative claim denials where medical evidence indicates that some limitations would enable the employee to perform sedentary work. *See, e.g. Walker-Stewart v. Fed. Express Corp.*, No. H-04-2187, 2005 WL 1185799, at *7 (S.D. Tex. 2005)(upholding denial of benefits when treating physician and occupational therapist cleared plaintiff for work with restrictions); *Graham v. L&B Realty Advisors, Inc.*, No. 3:02-CV-0293-N, 2003 WL 22388392, at *3–4 (N.D. Tex. Sept. 30, 2003) (upholding denial where physician cleared plaintiff for work with restrictions). In sum, we find that Hartford's interpretation was fair and reasonable, and that Hartford did not abuse its discretion by relying on the Department of Labor Dictionary to determine Pylant's job duties.

Turning to Pylant's argument that there is no substantial evidence that she can perform her occupation given her cognitive problems and inability to do frequent keyboarding, Hartford based its decision on various sources. The surveillance videotape showed a mobile person capable of performing a sedentary occupation. When interviewed post-surveillance, Pylant herself conceded that she could sit without restriction, contradicting her previous and later

7

assertions. Pylant's own treating physicians stated that she could return to work as a technical writer. The independent doctor to whom Hartford subsequently referred Pylant agreed with that assessment.

It is true that one of the treating physicians later retracted his statement and asserted that Pylant had "a lot of pain and cognitive problems" and "was taking some medications that affect her cognitive function," but he only did so during the appeals process, *after* meeting with Pylant's attorney. Moreover, he never mentioned either the type of medications taken or the extent to which Pylant was affected. During Pylant's interview, she stated that she was taking no medications and had not filled a prescription relating to her disability in a year. As such, Hartford could rightly afford the doctor's retraction and subsequent statements lesser weight. *See Gooden v. Provident Life & Accident Ins. Co.,* 250 F.3d 329, 333-34 (5th Cir. 2001) (finding no abuse of discretion when administrator did not give treating physician's changed opinion determinative weight because it was contrary to physician's previous opinion and was unaccompanied by evidence that plaintiff's medical condition had changed since most recent evaluation).

Even viewing all evidence in a light most favorable to Pylant, it is apparent that Hartford based its decision on substantial evidence. *See Sweatman v. Commercial Union Ins. Co.,* 39 F.3d 594,

601–03 (5th Cir. 1994) (finding no abuse of discretion when administrator relied on independent review of medical records and hired investigator to interview plaintiff). Consequently, Hartford did not abuse its discretion in terminating Pylant's LTD benefits, and the district court did not err in granting summary judgment as there was no question of material fact. *See* FED. R. CIV. P. 56(c).

For the foregoing reasons, we AFFIRM the district court.