IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 18, 2008

Charles R. Fulbruge III
Clerk

No. 07-10739

ROBERT DUNN

Plaintiff – Appellee

v.

GE GROUP LIFE ASSURANCE COMPANY;
GENWORTH FINANCIAL INC

Defendants – Appellants

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:05-cv-00352

Before HIGGINBOTHAM, STEWART, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

GE Group Life Assurance Company and Genworth Financial Inc. ("GEGLAC") appeal the district court's judgment awarding disability benefits to Robert Dunn, a beneficiary under a group disability plan. We conclude that the district court gave an overly restrictive interpretation to the plan administrator's discretion. We REVERSE, RENDER and REMAND this case to the district court for entry of judgment in favor of GEGLAC.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. Facts and Procedural Background

Robert Dunn had been an employee of ProAmerica for less than one year when he suffered a disabling stroke on September 23, 1997. After suffering the stroke, Dunn applied for disability benefits under ProAmerica's long term group disability plan (the "Plan"). The Plan was insured and administered by GEGLAC. GEGLAC approved Dunn's application and arrived at a monthly benefit based on Dunn's "Basic Monthly Earnings" ("BME") prior to his stroke. The Plan defines BME as follows:

> "Basic Monthly Earnings" means your gross monthly compensation from your employer including the gross monthly rate of commissions and Bonus Pay during the calendar year(s) prior to your Period of Disability as specified below. It includes employee pre-tax contributions to a deferred compensation plan which is defined by a documented pre-determined formula. It does not include:
>      1. overtime pay; or
>      2. any other fringe benefit or extra compensation.
>
> Calendar year(s) earnings will be averaged for the lesser of:
>      1. the prior calendar year(s) before the date your Period of Disability begins or
>      2. the period of employment if less than one calendar year(s).

ProAmerica reported that Dunn's monthly salary prior to his stroke was $4,000.00. Based on this information, GEGLAC calculated Dunn's BME to be $4,000.00 and paid him the correlative monthly benefit from December 1997 to October 2002, the maximum period of eligibility under the Plan.

In November 2002, Dunn requested a review of his monthly benefit calculation. Dunn argued that GEGLAC's BME calculation erroneously omitted $6,171.00 in commissions that were paid to Dunn by ProAmerica prior to his stroke. GEGLAC agreed with Dunn and adjusted his BME from $4,000.00 to $4,508.53. This increase accounted for the previously omitted commissions. GEGLAC issued a check in the amount of $20,225.79, representing the additional amount of monthly benefits owed during Dunn's period of eligibility.

In February 2003, Dunn requested another review. This time he argued that his BME should be adjusted to account for an additional $9,600.00 in commissions that he earned prior to his stroke, even though those commissions were not paid by ProAmerica until after his stroke. GEGLAC denied Dunn's request for a recalculation because the additional commissions were not actually paid "prior to [Dunn's] Period of Disability."

Dunn sued GEGLAC in Texas state court, alleging only state law causes of action. GEGLAC removed on the basis of Employee Retirement Income Security Act of 1974 ("ERISA") preemption, see 29 U.S.C. § 1001 et seq., and Dunn amended his complaint to allege only an ERISA-based cause of action. GEGLAC's summary judgment motion was denied. The court conducted a bench trial which resulted in a judgment against GEGLAC. The parties stipulated that the benefits under Dunn's interpretation would be $36,618.46. Judgment in that amount was entered.

GEGLAC appeals, arguing that the district court erred by (1) finding that GEGLAC's interpretation of the plan was not "legally correct" and (2) holding that GEGLAC's decision to include only those commissions actually paid in the BME calculation constituted an abuse of discretion.

## II. Discussion

### A. Standard of Review

We review the district court's grant of summary judgment de novo. High v. E-Systems Inc., 459 F.3d 573, 576 (5th Cir. 2006). Summary judgment is appropriate if the evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Id. (citing Fed. R. Civ. P. 56(c)). However, because the language of this ERISA plan grants GEGLAC the discretion to interpret the Plan and determine a claimant's eligibility for benefits, we will set aside GEGLAC's benefits decision only for an abuse of discretion. Id.

This court applies a two-step analysis to determine whether the plan administrator abused its discretion in construing plan terms. Plyant v. Hartford Life and Accident Ins. Co., 497 F.3d 536, 540 (5th Cir. 2007). First, we determine whether the administrator's interpretation is "legally correct." Id. If so, there is no abuse of discretion and the inquiry ends. Id. However, if the administrator has not given the plan a legally correct interpretation, we must consider whether the administrator's interpretation constitutes an abuse of discretion. Id; see High, 459 F.3d at 577 & n.2.

Our precedents recognize that we need not take the first step in the analysis if we can determine that the administrator's benefits decision was not an abuse of discretion. High, 459 F.3d at 577; MacLachlan v. ExxonMobil Corp., 350 F.3d 472, 481 (5th Cir. 2003). This means that GEGLAC's interpretation of the Plan, even if legally incorrect, will be affirmed so long as it constitutes a reasonable exercise of interpretive discretion. When reviewing the exercise of discretion, we must "analyze whether the plan administrator acted arbitrarily or capriciously." Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc., 168 F.3d 211, 214 (5th Cir. 1999). "A decision is arbitrary only if made without a rational connection between the known facts and the decision or between the found facts and the evidence." Id. at 215 (quotation marks omitted). This court's "review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness – even if on the low end." Corry v. Liberty Life Assur. Co. of Boston, 499 F.3d 389, 398 (5th Cir. 2007).

We will explain the reasons that we find GEGLAC did not abuse its discretion when it interpreted the Plan to include only commissions actually paid in the BME calculation. That conclusion means we need not determine whether the interpretation was also "legally correct." We note, however, that the decision to skip the first step is not tantamount to endorsing the district court's

conclusion that GEGLAC's interpretation of the Plan was not a legally correct one. Instead, it is a recognition that an analysis of legal correctness is superfluous in a case such as this, where the minimally-conflicted administrator has given a reasonable interpretation to ambiguous plan language. In accordance with our precedent, we turn directly to the second step in our analysis and consider whether GEGLAC abused its discretion.

B. GEGLAC's discretion

We structure our review around GEGLAC's objections that the district court (1) improperly applied the rule of contra proferentem to construe the Plan terms against GEGLAC and (2) gave GEGLAC's interpretation of the Plan insufficient deference under the abuse of discretion analysis.

1. Contra Proferentem

The district court found the Plan language ambiguous and applied the doctrine of contra proferentem, i.e., interpreting a contract against the drafter.[1] Under this Circuit's "unique two-step approach to apply[ing] the abuse of discretion standard, [] contra proferentem may properly be used under the first step." Rhorer v. Raytheon Engineers and Constructors, Inc., 181 F.3d 634, 642 (5th Cir. 1999). GEGLAC correctly notes that the rule of contra proferentem is inapplicable under the second step of our analysis, because GEGLAC's discretion to interpret the Plan necessarily includes the power to resolve any ambiguities therein. High, 459 F.3d at 579.

Here, the district court was confronted with two reasonable interpretations of the Plan and applied contra proferentem to resolve the ambiguity, construing the language against GEGLAC. His application of the rule was confined to

---

[1] The rule of contra proferentem is a rule of last resort under which ambiguities in contract language are resolved against the drafter. High, 459 F.3d at 578-79; see 11 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 32:12 (4th ed. 2000).

determining whether GEGLAC's interpretation of the Plan was "legally correct," the first step in the analysis. This was a proper use of contra proferentem under our ERISA precedent.

2. Conflict of Interest

Dunn argued and the district court agreed that GEGLAC was operating under a conflict of interest because it was both the insurer and the administrator of the Plan. Courts must account for any conflict when reviewing an administrator's benefits decision. The Supreme Court has noted that when "a benefit plan gives discretion to an administrator . . . who is operating under a conflict of interest, that conflict must be weighed as a facto[r] in determining whether there is an abuse of discretion." Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989) (quotation marks omitted).

When a conflict of interest is identified, this court applies a "sliding scale" to assess the potential impact of the conflict. Lain v. UNUM Life Ins. Co. of America, 279 F.3d 337, 343 (5th Cir. 2002). "The greater the evidence of conflict on the part of the administrator, the less deferential our abuse of discretion standard will be." Id. "When a minimal basis for a conflict is established, we review the decision with only a modicum less deference than we otherwise would." Id. (emphasis in original; quotation marks omitted).

According to the district court, GEGLAC's dual role created a conflict "near that end of the sliding scale continuum approaching an absolute conflict of interest and compels a finding that its interpretation of this contract term is entitled to minimal deference." The district court supported its decision with the following language from an Eleventh Circuit opinion:

> [W]hen a plan beneficiary demonstrates a substantial conflict of interest on the part of the fiduciary responsible for benefits determinations, the burden shifts to the fiduciary to prove that its interpretation of plan provisions committed to its discretion was not tainted by self-interest. That is, a wrong but apparently reasonable

6

> interpretation is arbitrary and capricious if it advances the conflicting interest of the fiduciary at the expense of the affected beneficiary or beneficiaries unless the fiduciary justifies the interpretation on the ground of its benefit to the class of all participants and beneficiaries.

Brown v. Blue Cross & Blue Shield of Alabama, Inc., 898 F.2d 1556, 1566-67 (11th Cir. 1990) (emphasis added). GEGLAC does not dispute that its dual role as insurer and administrator creates a conflict of interest under this court's precedent, see Plyant, 497 F.3d at 539, but argues that the district court improperly weighed that conflict under this court's "sliding scale."

As an initial matter, the Brown test from another Circuit is at odds with this court's settled treatment of administrator conflicts under ERISA. In fact, we have expressly rejected Brown's "presumptively void" standard. Vega v. National Life Ins. Servs., 188 F.3d 287, 296-98 (5th Cir. 1999) (en banc). Under our precedent, the burden remains on the claimant to muster any evidence of a conflict that would undermine the administrator's benefits decision; it does not shift to the administrator to prove that its decision was not self-interested. See id. at 298-99. GEGLAC's dual role as administrator and insurer is merely one factor in the overall abuse of discretion analysis. Metropolitan Life Ins. Co. v. Glenn, 128 S. Ct. 2343, 2348-49 (2008).[2]

Further, Dunn has not demonstrated that GEGLAC's decision was tainted by a "substantial" conflict of interest. GEGLAC's dual role as administrator and

---

[2] In Glenn, the Supreme Court confirmed that "the fact that a plan administrator both evaluates claims for benefits and pays benefits claims" creates a conflict of interest that must be weighed as a factor in determining whether there was an abuse of discretion. 128 S. Ct. at 2348-49 (citing Firestone, 489 U.S. at 115). In addressing how such a conflict must be accounted for under an abuse of discretion review, the Court eschewed "special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict." Id. at 2351. The Court's treatment of the evaluator/payor conflict as merely one factor in the overall abuse of discretion analysis is more closely aligned with this court's "sliding scale" approach than the Eleventh Circuit's "presumptively void" standard. Compare id. at 2350-52 with Vega, 188 F.3d at 298-99.

insurer creates only a minimal conflict, not a substantial one.  Corry, 499 F.3d at 398.  Dunn has offered no other evidence of a conflict of interest.  In such a case, where the claimant has identified GEGLAC's dual role as administrator and insurer but has pointed to no further evidence of a conflict, we review GEGLAC's decision with "only a modicum less deference" than would otherwise be afforded under the abuse of discretion standard.  Id.; Plyant, 497 F.3d at 539.  Quite contrary to the standard announced in Brown, under these circumstances we will defer to GEGLAC's interpretation of the Plan, even if that interpretation is "wrong" (in the sense that it is legally incorrect), so long as GEGLAC's interpretation "fall[s] somewhere on a continuum of reasonableness . . . ."  Corry, 499 F.3d at 398.

In summary, two equally rational interpretations of the Plan language are involved in this dispute.  Under the Plan, "'Basic Monthly Earnings' means your gross monthly compensation from your employer including the gross monthly rate of commissions and Bonus pay during the calendar year(s) prior to your Period of Disability . . . ."  The term "commissions" is not qualified in any way (e.g., "commissions paid" or "commissions earned").  Dunn's interpretation of BME to include all commissions earned during the year prior to his stroke is certainly reasonable; but, GEGLAC's interpretation of BME to include only those commissions actually paid is also reasonable.[3]  In this classic example of

---

[3] We interpret ERISA plan language "in an ordinary and popular sense as would a person of average intelligence and experience, such that the language is given its generally accepted meaning if there is one."  Keszenheimer v. Reliance Standard Life Ins. Co., 402 F.3d 504, 507 (5th Cir. 2005).  The term "commission" is defined as "[a] fee paid to an agent or employee for a particular transaction . . . [,]" BLACK'S LAW DICTIONARY 286 (8th ed. 2004) (emphasis added), or "a fee paid to an agent or employee for transacting a piece of business or performing a service . . . [,]" WEBSTER'S THIRD NEW INT'L DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 457 (1993) (emphasis added).  The definition of "paid" is "receiving pay; marked by the reception of pay . . . ."  WEBSTER'S, supra, at 1620 (emphasis added).  These definitions suggest that "commissions" are commonly understood to be payments that are actually received by an employee.

ambiguous plan language, GEGLAC was permitted to apply an interpretation of the Plan that was reasonable and not arrived at in an arbitrary and capricious manner. We find reasonableness and no caprice.

Therefore, we REVERSE the judgment in favor of Dunn, RENDER judgment for GEGLAC, and REMAND for entry of judgment.

REVERSED, RENDERED, and REMANDED.